UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cr-00164-SEB-TAB |
| | ) | |
| TYLER TEAGUE, | ) -01 | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

Now before the Court is Defendant's Motion to Suppress [Dkt. 41], filed on

January 14, 2026.  Defendant Tyler Teague is charged in the Indictment with eight counts

of Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a) and eight

counts of Brandishing a Firearm During and in Relation to a Crime of Violence, in

violation of 18 U.S.C. § 924(c)(1)(A)(ii).  Mr. Teague seeks to suppress his *Mirandized*

statement, arguing that his confession to seven of the eight robberies violated his Fifth

Amendment rights under the United States Constitution.  The defense represents that the

motion to suppress can be resolved upon a review of the videotaped statement without the

Court conducting an evidentiary hearing, and the Government agrees.  The Motion is

fully briefed and, based on the applicable principles of law explicated below, Defendant's

Motion to Suppress is <u>DENIED</u>.

**Factual Background**

Mr. Teague was arrested following the armed robbery of a Family Dollar store in

Indianapolis, Indiana, on October 15, 2023, which robbery is the basis of Counts 15 and

1

16 of the Indictment.  At the time of his arrest, Mr. Teague was 18 years old with limited prior experience with law enforcement.  He was thereafter taken to the police station at 40 South Alabama Street in Indianapolis for questioning, which interview was videotaped.

Upon arriving at the police station, Mr. Teague was brought into the interview room in custody by Indianapolis Metropolitan Police Department Detective DeJour Mercer.  Mr. Teague's handcuffs were removed, he was seated, and an anchored handcuff was attached to his left wrist.  Detective Mercer offered to find Mr. Teague water and chips, after which Detective Mercer exited the room and Mr. Teague was left alone for approximately 15 minutes before TFO Schultz entered the interview room.  TFO Schultz shook Mr. Teague's hand, offered him food and a drink, and informed Mr. Teague that there was a camera in the room that was recording.  After a few minutes, TFO Schultz left the interview room, leaving Mr. Teague alone.  Detective Mercer briefly reentered the room to provide Mr. Teague a bottle of water and a bag of Cheetos and then left again.

Detective Mercer and TFO Schultz reentered the room together approximately 25 minutes later to speak with Mr. Teague.  Mr. Teague answered TFO Schultz's basic biographical questions, including his date of birth and address.  The interaction was cordial, and Mr. Teague responded appropriately.  TFO Schultz then stated, "Something stupid happened today; were going to talk about it."  Exh. A at 50:40.  At this point, TFO Schultz read Mr. Teague the standard Miranda warnings, Mr. Teague confirmed that he understood his rights, agreed to questioning, and executed a written Miranda waiver.  *Id.* at 51:16–53:24.  Prior to submitting the written waiver to Mr. Teague, TFO Schultz asked

2

Mr. Teague whether he was "willing to talk to us about today." *Id.* at 52:30. Mr. Teague agreed and executed the waiver. *Id.* at 52:40–53:00. Thereafter, Mr. Teague admitted to committing the Family Dollar robbery that day. *Id.* at 53:00–1:10:23.

At that point in the interview, TFO Schultz stated, "Let me ask you this, Tyler, okay? Going to school, remember taking tests in life? Okay. Pretend you're a student, I'm a teacher, okay? Do you think I know a lot of the answers already?" *Id.* at 1:10:22–1:10:35. Mr. Teague responded, "Yeah." *Id.* at 1:10:36. TFO Schultz said, "Okay, all right. Is this your first robbery?" *Id.* at 1:10:37–1:10:39. Mr. Teague again responded, "Yeah." *Id.* at 1:10:40.

TFO Schultz continued, "I don't want to put you in that corner, man. I really don't. Okay, I don't. And I know each outcome happened, no one got hurt. And I'm glad for that, all right. And I think this is a constant thing where you're trying to provide for your family, all right. You are a good person. And you can do more than one stupid thing in life, okay, all right. I'm glad no one ever got hurt. And I'm glad you didn't get hurt, okay? So I'm going to ask this question again, Tyler, and I want you to think about it, okay? Because we had an idea about this stuff, okay? This is his [Detective Mercer's] job in life. He looks at this stuff, okay? This is my job in life, all right? Is this the first robbery you've committed?" *Id.* at 1:10:43–1:11:36.

Mr. Teague replied by quietly mumbling, "I don't even want to talk about …," before trailing off.[1] *Id.* at 1:11:36–1:11:38. TFO Schultz then said, "I know. I can walk you through some of them." *Id.* at 1:11:40–1:11:41. Mr. Teague mumbled unintelligibly in response. *Id.* at 1:11:42–1:11:43. TFO Schultz then stated, "Do you want to talk about … I can talk to you about each one of them, okay?" *Id.* at 1:11:44–1:11:47. Mr. Teague responded, "All right." *Id.* at 1:11:48.

TFO Schultz continued: "Cause I know there are several of them, all right? There are several of them involving your vehicle. Technology … nowadays is phenomenal when it comes to vehicles, identifying vehicles and stuff like that, okay? There's several of them, okay? I don't want to scare you, all right? And I know the reason why you're doing this stuff, all right? I don't want to accuse you of doing one you didn't do, okay? I don't want to put something on you that you didn't do, okay? All right? Does that make sense?" *Id.* at 1:11:48–1:12:19.

Detective Mercer stated, "Just to add to that, so I'm going to talk a little bit about what we do, right? So he [TFO Sanchez] does other stuff. He's with the FBI, the Violent Crimes Task Force, right? So he's got bigger fish to fry, right? What I do on a day-to-day basis, I'm in a unit called, I'm a robbery detective, okay? Um, I don't dress like a robbery detective. The other guys you saw, they responded, they didn't dress like robbery detectives, did they? You see my car is not a regular police car. We deal with multiple

---

[1] TFO Schultz testified by affidavit that he did not hear Mr. Teague say these words during the interview and that it required him listening to the video recording of the interview several times before he could make out what Mr. Teague had said. Schultz Aff. ¶ 10.

robberies.  So there's a detective that will show up to the robbery today, right?  She'll have a suit and tie on, something like that.  She'll respond. My unit gets involved when there's multiple of those involving the same suspect or the same crew.  Um, did you find it odd that I knew who you were today, before you told me who you were?"  *Id.* at 1:12:20–1:13:08.

After a short exchange between Mr. Teague and Detective Mercer regarding Mr. Teague's father, TFO Sanchez said, "What he's [Detective Mercer] trying to allude is he knew who you were before you even know who we were."  *Id.* at 1:13:25–1:13:29.  Continuing, Detective Mercer said, "So when your dad showed up, I knew what your dad was doing, I knew he was there to pick you up.  I saw his truck.  I know your dad's plate.  I know the vehicle cross.  I know the shaker crews at your house all these things, right?  So I just want to let you know today is not one, not an incident we just kind of just out of the blue got involved in.  I just want to give you before you mention this question I want you to know how that and get the back your head, okay.  He says not to ask me questions that we don't know the answer to already.  It's kind of like that, right?  It's … I want to … you been honest so far, and I'm like … most of it.  There's just … you started drifting a little bit, and I think you know why.  But I want to let you know that it's okay.  It's okay because we know.  Remember I told you we know the what and stuff like that?  This is kind of part of that too.  And it doesn't change today.  Nothing changes.  We're still moving forward.  In order to do that, we got to make sure that you know and you're accountable for each scenario, right?  It's important.  We will open the door.  Okay?"  *Id.* at 1:13:29–1:14:27.

5

After a long pause, TFO Schultz said, "I can tell you this.  I know you don't go out every single day and do a robbery.  I think you're not going multiple times a week.  I think you go just when you feel like you're angry inside and you go commit one.  So you get the money.  You got a gambling problem too, bro?  What do you gamble on?" *Id.* at 1:14:39–1:14:59.  At this point, there was a discussion among TFO Schwartz, Detective Mercer, and Mr. Teague about sports betting, after which TFO Schultz said, "All right.  More than one though, correct?  Yes or no?  Shaking your head 'yes'?  Just say 'yes.'  You'll feel a lot better getting this off your chest, man." *Id.* at 1:17:23–1:17:39.  Following a pause and a sigh, Mr. Teague answered, "Yes." *Id.* at 1:17:42.

Thereafter, Mr. Teague was questioned about the other seven robberies charged in the Indictment and provided details regarding his involvement in each.  For example, with regard to an armed robbery of a Walgreens store on October 7, 2023, Mr. Teague responded, "yes," when asked if he was alone during that robbery and answered, "no," when asked if his girlfriend was with him. *Id.* at 1:21:25–1:21:28.  TFO Schultz asked, "Do you remember how much money you got that time?" *Id.* at 1:21:32.  Mr. Teague answered, "I am going to be honest; I don't remember how much money I got." *Id.* at 1:21:38.  In response to TFO Schultz's inquiry as to whether the firearm that Mr. Teague had used on October 7 was the same firearm that he had used in the robbery earlier that day, Mr. Teague responded, "Yes, sir." *Id.* at 1:21:45.  TFO Schultz then asked, "does your gun have an extended magazine?" *Id.* at 1:22:42.  Mr. Teague answered, "Yeah it do." *Id.* at 1:22:52.  Mr. Teague confirmed that he took a pair of gloves during that

robbery because it was cold, and his niece needed them.  *Id.* at 1:23:24.  Mr. Teague told the officers that he "use[d] the money for bills."  *Id.* at 1:24:11.

TFO Schultz next inquired regarding the September 24, 2023 robbery of a different Walgreens store.  Mr. Teague stated: "I remember the same thing for each one … I say the same thing every time … I don't want anyone to get hurt."  *Id.* at 1:25:15.  In response to TFO Schultz's question regarding whether he used the same handgun, Mr. Teague stated, "Yes."  *Id.* at 1:25:20.  Mr. Teague also confirmed that he took money from the safe during that robbery.  *Id.* at 1:22:28.

Regarding the September 19, 2023 armed robbery of a CVS store, Mr. Teague stated that he remembered committing the robbery and wearing the same purple gloves that he wore during the other robberies.  *Id.* at 1:26:28.  He confirmed that he used his Toyota Corolla during the September 19 robbery of the CVS.  *Id.* at 1:26:56.

The remainder of Mr. Teague's statement follows a similar pattern, with Mr. Teague admitting details regarding the additional robberies charged in the Indictment.

### Legal Analysis

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), an individual must be "clearly informed," prior to custodial questioning, that he has, among other rights, "the right to remain silent" and "the right to consult with a lawyer and to have the lawyer with him during interrogation."  *Id.* at 471.  If the accused makes a voluntary, knowing, and intelligent waiver of his *Miranda* rights, "law enforcement officers are free to question him."  *Davis v. United States*, 512 U.S. 452, 458 (1994).  However, the individual may also revoke that waiver by indicating "in any manner, at any time prior to or during

7

questioning, that he wishes to remain silent," at which point, "the interrogation must cease."  *Miranda*, 384 U.S. at 473–74; *accord Michigan v. Mosley*, 423 U.S. 96, 104 (1975) (an accused's "right to cut off questioning" must be "scrupulously honored"). "The burden is on the individual in custody to make a 'clear and unambiguous assertion' of their rights, at which point the officers must cease their questioning."  *United States v. McKinney*, No. 24-CR-20031, 2025 WL 2979683, at *4 (C.D. Ill. Oct. 22, 2025) (quoting *United States v. Thurman*, 889 F.3d 356, 364 (7th Cir. 2018)).  *See also Berghuis v. Thompkins*, 560 U.S. 370, 381–82 (2010) (holding that, to invoke the right to remain silent, a suspect must do so "unambiguously").

Mr. Teague does not dispute, and the video confirms, that he was properly advised of and effectively waived his *Miranda* rights before he was initially questioned. However, Mr. Teague claims that he subsequently revoked his *Miranda* waiver as to his right to remain silent on the topic of robberies other than the October 15, 2023 Family Dollar store robbery when, in response to TFO Schwartz's inquiry as to whether the Family Dollar store robbery was his first robbery, he quietly said, "I don't even want to talk about …" before his voice trailed off.  The defense contends that, although Mr. Teague's response "was hardly a bold assertion of his constitutional right to cease questioning about other robberies, neither was the response conditional or ambiguous," Dkt. 46 at 8, and thus, by continuing to question Mr. Teague regarding whether he wanted to discuss other robberies despite his expressed reticence to do so, law enforcement failed to "scrupulously honor" Mr. Teague's right to cut off questioning regarding that topic, necessitating suppression of his statement from that point forward.

"A defendant may selectively waive his *Miranda* rights by agreeing to answer some questions but not others."  *United States v. Lazcano-Neria*, No. 22-50068, 2024 WL 1461367, at \*1 (9th Cir. Apr. 4, 2024) (quoting *United States v. Soliz*, 129 F.3d 499, 503 (9th Cir. 1997), *overruled on other grounds by United States v. Johnson*, 256 F.3d 895 (9th Cir. 2001)); *accord Miranda*, 384 U.S. at 445 ("The mere fact that [a suspect] may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries …."). However, "[t]hat an individual in custody can selectively invoke his *Miranda* rights does not obviate the requirement that a suspect must invoke any *Miranda* right unambiguously and unequivocally to trigger its protection."  *Michaels v. Davis*, 51 F.4th 904, 922 (9th Cir. 2022).  *See also Smith v. Boughton*, 43 F.4th 702, 709 (7th Cir. 2022) ("The key inquiry, then, is whether a reasonable officer under the circumstances would understand the defendant's statements as an unequivocal invocation of the right to remain silent."). Accordingly, the question here is whether a reasonable officer under the circumstances would have understood Mr. Teague to have clearly and unequivocally invoked his *Miranda* rights selectively regarding the topic of his involvement in robberies other than the October 15, 2023 Family Dollar store robbery.

We hold that a reasonable officer under the circumstances presented here would not have understood Mr. Teague's quietly uttered and unfinished statement, "I don't even want to talk about …" in response to TFO Schwartz's question whether the Family Dollar store robbery was his first to be a clear and unambiguous invocation of his right to remain silent about other robberies.  TFO Schwartz testified by affidavit that he did not even hear

9

Mr. Teague make this statement during the interview because Mr. Teague was mumbling and not until he reviewed the video recording of the interview several times thereafter was he able to make out what Mr. Teague had said. Insofar as the defense does not challenge the veracity of TFO Schwartz's testimony, and the video evidence corroborates Mr. Teague's *sotto voce* utterance, made while his hand intermittently covered his mouth, we credit for purposes of this motion TFO Schwartz's testimony that he did not hear Mr. Teague's statement.

The First Circuit Court of Appeals has held in circumstances where *no* officer heard the suspect's invocation that "it could not have been a clear invocation [of the right] … [because] officers could not have objectively understood a statement [that] they did not hear to be an assertion of the right …." *United States v. Dudley*, 804 F.3d 506, 513 (1st Cir. 2015); *accord United States v. Monroe*, Nos. 19-1869, 19-1872, 2021 WL 8567708, at *3 (1st Cir. Nov. 10, 2021) ("We further see no error in the district court's factual determination … that interviewing officers did not hear appellant state 'conversation's over,' and its resulting conclusion that officers therefore could not objectively have understood appellant to be invoking his right to remain silent, particularly in light of appellant's subsequent voluntary resumption of the conversation."). Because the record before us is silent as to whether Detective Mercer was also unable to hear Mr. Teague's statement, we hold that TFO Schwartz's inability to hear Mr. Teague is relevant to our determination of what a reasonable officer may have understood, but not fully dispositive.

Even Mr. Teague's words had been heard by the officers, the meaning of what he allegedly said is also not clear, especially since the remainder of his statement was entirely unintelligible.  A reasonable officer would not have understood that unfinished sentence, "I don't even want to talk about…" to be a clear and unambiguous invocation of his right to remain silent regarding the specific topic of other robberies.  The unfinished nature of Mr. Teague's sentence renders it ambiguous both as to its scope and meaning.  As such, it was not an unequivocal invocation of his right to remain silent and to end questioning about other robberies beyond the Family Dollar store robbery.  The Seventh Circuit has observed that, "when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants [to stop questioning]." *United States v. Wysinger*, 683 F.3d 784, 795 (7th Cir. 2012) (quoting *United States v. Lee*, 413 F.3d 622, 626 (7th Cir. 2005)).  In the case at bar, TFO Schwartz followed up by offering to "walk [Mr. Teague] through some of [the robberies]" and asking him whether he "want[ed] to talk about … each of them," to which Mr. Teague responded, "All right."  Exh. A at 1:11:44–1:11:48.  Only after Mr. Teague affirmatively indicated a willingness to discuss other robberies in response to TFO Schwartz's clarifying question did TFO Schwartz and Detective Mercer interrogate him about robberies other than the Family Dollar store robbery.

Based on these circumstances, we hold that a reasonable officer would not have understood Mr. Teague to have clearly and unequivocally invoked his right to remain silent with respect to robberies other than the Family Dollar store robbery.  Accordingly, Mr. Teague's Fifth Amendment rights were not violated when TFO Schwartz sought to

11

clarify whether Mr. Teague was willing to discuss other robberies or when TFO Schwartz

and Detective Mercer interrogated him regarding those robberies after he had given a

clear and affirmative indication of his willingness to discuss them.  Accordingly,

Defendant's motion to suppress is <u>DENIED</u>.

IT IS SO ORDERED.

Date:   _____4/17/2026_____          _____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Peter A. Blackett
DOJ-USAO
peter.blackett@usdoj.gov

William H. Dazey, Jr.
INDIANA FEDERAL COMMUNITY DEFENDERS
bill.dazey@fd.org